MILWAUKEE AREA JOINT PLUMBING APPRENTICESHIP COMMITTEE, on its own Behalf, and on Behalf of Other Joint Apprenticeship Committees, Similarly Situated: Wisconsin Pipe Traders Association, AFL-CIO; Wisconsin State Council of Carpenters, AFL-CIO; Sheet Metal Workers Union No. 18; Bricklayers, AFL-CIO; Wisconsin Conference of Electricians, AFL-CIO; Asbestos Workers Union Local No. 19; Roofers Union No. 65, Petitioners-Appellants,†

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Respondent.

Court of Appeals

No. 90-1840. Oral argument September 5, 1991.—Decided November 5, 1992.

(Also reported in 493 N.W.2d 744.)

†Petition to review denied.

300

302

For the petitioner-appellant, Milwaukee Area Joint Plumbing Apprenticeship Committee, the cause was submitted on the brief of *Judith E. Kuhn* of Milwaukee. Orally argued by *Judith E. Kuhn.*

For all petitioners-appellants except Milwaukee Area Joint Plumbing Apprenticeship Committee, the cause was submitted on the brief of *David Leo Uelmen* and *John J. Brennan* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.* of Milwaukee. Orally argued by *David Leo Uelmen.*

For the respondent, Department of Industry, Labor and Human Relations, the cause was submitted on the brief of *Donald J. Hanaway*, Attorney General, and *James E. Doyle*, Attorney General, with *David E. Hoel*, Assistant Attorney General. Orally argued by *David E. Hoel.*

For the intervenor-respondent, the cause was submitted on the brief of *James K. Pease, Jr.* and *Carol M. Gapen*, of *Melli, Walker, Pease & Ruhly, S.C.* of Madison. Orally argued by *James K. Pease, Jr.*

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. The appellants are Milwaukee Area Joint Plumbing Apprenticeship Committee and seven labor organizations.[1] The respondent is the Department of Industry, Labor and Human Relations

---

[1] The labor organizations are Wisconsin Pipe Trades Association, AFL-CIO; Wisconsin State Council of Carpenters, AFL-CIO; Sheet Metal Workers Union No. 18; Bricklayers, AFL-CIO; Wisconsin Conference of Electricians, AFL-CIO; Asbestos Workers Union Local No. 19; and Roofers Union No. 65.

(DILHR). Appellants appeal from a judgment dismissing their ch. 227, Stats., petition to review DILHR's decision approving an apprenticeship program proposed by Associated Builders and Contractors of Wisconsin, Inc. (ABC). ABC, an association of building contractors located in Wisconsin, is an intervenor-respondent. The ABC program is an employer-operated program. Employee organizations are not represented in it.

The ABC program approved by DILHR is entitled "Apprenticeship Standards for Associated Builders and Contractors of Wisconsin, Inc." It establishes a committee to administer and supervise the standards and provides that apprentices may enter an indenture with the committee. It contains almost thirty separate paragraphs covering sponsorship, applications, training, obligations of the employer and the apprentice, the term of training, probationary period, ratio of apprentices to skilled craftspersons, hours of work, wages, related school attendance, credit for previous experience, credit during the term of training, a complaint procedure, continuity of employment, examinations, cancellation of indentures, appeal procedure, etc. Attached to it are specific provisions applicable to particular trades.

The parties stipulated to the issue at the hearing which resulted in the DILHR decision. As described by the administrative law judge (ALJ), who conducted the hearing described in this opinion,

> The issue to be decided, as stipulated by the parties, is whether the August 3, 1987, Bureau of Apprenticeship Standards [BAS], DILHR, approval of the Associated Builders and Contractors of Wisconsin Apprenticeship Program was a rule making procedure such that DILHR was required to follow the rule making procedures found in the Administrative

307

Rules, chapter 227, Stats., and section 106 of the Wisconsin statutes.[2]

We immediately reject appellants' claim that the ALJ stated the issue too narrowly. Before DILHR issued its final decision adopting the proposed decision of the ALJ, it gave all parties the opportunity to comment or to object to the proposed decision. Appellants lodged various objections to the proposed decision, but no objection was directed to the ALJ's statement of the issue, which we have quoted from his decision. It is too late to argue that the ALJ misdescribed the issue. The issue before us is as the ALJ described it.

Appellants contend that before it approved ABC's program, DILHR's policy was to administer a single construction[3] apprenticeship system, with uniform state and area standards, through state and area committees having exclusive jurisdiction over apprenticeships within their trade and geographical jurisdictions. The committees were joint committees with equal employer and employee representation. Appellants contend that DILHR's published rules, the BAS Apprenticeship Manual (Manual) and a 1973 "policy statement" regarding apprenticeships established and recognized the exclusivity of that joint committee apprenticeship system for the construction industry. Appellants contend that DILHR

---

[2] Neither the statutes nor DILHR's published rules recognize BAS. DILHR's published apprenticeship rules, Wis. Adm. Code ch. Ind. 95, refer only to DILHR and to the division of apprenticeship and training. But because the ALJ referred to BAS, as do the parties in their briefs, we generally follow the same practice in this opinion.

[3] The ALJ found that BAS has previously approved several employer-sponsored programs. None of those programs involved the construction industry, but sec. 106.01, Stats., which governs apprenticeships, does not distinguish between types of industries.

could not approve the ABC apprenticeship program without new rules formally adopted under ch. 227, Stats.

Appellants also contend that the program is inconsistent with DILHR's rules, and the ALJ should have admitted testimony by the staff of the legislature's Joint Committee for Review of Administrative Rules.

We reject appellants' contentions and affirm.

### 1. Background

DILHR is responsible for regulating apprenticeships and apprenticeship indentures. Section 106.01(9), Stats. An apprentice enters a contract to receive from his employer, in consideration for his services, "instruction in any trade, craft or business." Section 106.01(1), Stats. The minimum term for the indenture, and the parties, form and content, as well as certain other terms, are prescribed by the statute. Section 106.01(3) through (5), Stats.

Section 106.01(5i)(a), Stats., provides in part:

> The proper persons described in sub. (4)(a) to (d) [the apprentice, his or her parents or guardian] may enter into such an indenture with any organization of employes, association of employers or other similar responsible agency in this state. Such organization, association or other agency shall thereupon, with the written consent of the other parties to the indenture, and the written acceptance thereof by the proposed employer, assign the indenture to the employer, and he and the apprentice named in the indenture shall be bound by the terms thereof. . .. The approval of [DILHR] shall first be had in each transaction.

Section 106.01(5i)(b), Stats., provides in part:

> Any employer may assign his indenture, with the approval of [DILHR] and the written consent of the other parties thereto, to any association of employ-

ers, organization of employes or any other similar responsible agency in this state. . ... After such assignment the association, organization or other agency shall, with the approval of [DILHR] and the written consent of the apprentice, assign the indenture to an employer. . ..[4]

## 2. Hearing and Order on ABC's Program

In 1973, ABC applied to BAS for approval of an apprenticeship program. BAS denied approval because the program's standards failed to meet the state's standards in at least 50 respects.[5] On March 24, 1987, ABC submitted revised apprenticeship standards to BAS for approval. ABC's program involves no participation by labor organizations. BAS reviewed the new ABC pro-

---

[4] Chapter 274, Laws of 1937, created sec. 106.01(5i)(a), Stats. Subsequent amendments have not materially changed the statute. Its genesis appears to be a letter by a field representative of a federal committee on apprentice training to the president of the Wisconsin State Federation of Labor. The writer states that as a result of his visit to the then Industrial Commission regarding apprentice legislation, a bill was proposed to amend the apprenticeship law

> [t]o make legal the indenturing of learners to organizations of employees according to the program now in force on the Greendale Project of the Resettlement Administration, [and] to associations of employers as is being done at present by the Milwaukee Master Carpenters' Ass'n.

Letter from M. M. Hanson, Field Representative, Federal Committee on Apprentice Training, to Henry Ohl, Jr., President, Wisconsin State Federation of Labor (Dec. 28, 1936), in drafting file for ch. 274, Laws of 1937, Wisconsin Legislative Reference Bureau.

[5] The order denying approval is not part of the record. A past director of BAS testified that the United States Department of Labor had approved the program but it did not meet Wisconsin's standards.

gram and determined that it met the state's standards. On August 3, 1987, BAS approved the ABC program.

Appellants sought a hearing under sec. 101.02, Stats., seeking invalidation of that approval.[6] ABC was granted leave to intervene. The petition for a hearing charged various procedural and substantive defects connected with approval of the ABC program. However, as we have said, the parties narrowed the issues by agreeing that the issue was whether BAS's approval of ABC's apprenticeship program was a rule-making procedure such that DILHR was required to follow the administrative rule-making procedures in ch. 227, Stats.

Following the hearing, the ALJ found that apprenticeship programs provide Wisconsin industries with a continual supply of skilled workers, provide an additional career opportunity for many of the youth of the state, and serve as a protective measure for persons entering skilled trades training. The agreement or indenture between the employer and the apprentice is a basic part of the Wisconsin apprenticeship system. BAS must approve each indenture.

The ALJ found that employers, apprentices and potential apprentices throughout the state are interested in the indenture program. Because BAS has limited resources, it has encouraged industry participation in

---

[6] Appellants sought that hearing after bringing an action in circuit court challenging the ABC program approval. *Milwaukee Area Joint Plumbing Apprenticeship Committee v. DILHR*, No. 87-CV-4955 (Dane County Circuit Court signed June 21, 1988). The circuit court dismissed appellants' complaint on grounds they had failed to exhaust administrative remedies, as mandated by sec. 106.01(9), Stats., which incorporates sec. 101.02(8)(a), Stats. The latter statute prohibits an "action . . . to set aside, vacate or amend any order" unless the plaintiffs "have applied to [DILHR] for a hearing thereon."

selecting and placing apprentices as well as providing the needed specialized training. Industry participation has occurred through the formation of "joint apprenticeship committees" composed of representatives from both employer and labor organizations.[7] These committees submit their apprenticeship training programs to BAS for approval. BAS reviews the proposed programs to determine whether they conform to state laws, regulations and standards, and the committees administer approved programs.

The ALJ rejected appellants' argument that because it was employer-sponsored, approval of the ABC program was improper. He noted that sec. 106.01(5i)(a), Stats., specifically provides that an apprentice may enter an indenture with an employer organization, and he found that BAS has previously approved several employer-sponsored programs. He rejected appellants' argument that since they already have in place in Wisconsin a complex and effective program for indenturing, training and monitoring apprentices, it was duplicitous as well as improper to approve ABC's training program

---

[7] It is helpful immediately to explain the difference between the two kinds of joint committees which serve the construction industry, state joint apprenticeship committees and area joint apprenticeship committees. The state committees draw statewide standards for trade classifications within the industry, and "[w]hen these standards have been submitted by the committee and adopted by [BAS], all area standards and indentures will have to meet the minimums of these state standards." BAS Apprenticeship Manual, Chapter II(D). Each area joint apprenticeship committee is assigned a geographical area by BAS. Manual, Chapter II(E). If state standards exist, an area committee must use the state standards for a trade as a guide for the operation of the apprenticeship program in its area. BAS will approve a new standard only if it conforms to the minimum requirements of the state standards. Manual, Chapter II(F).

without rule-making.[8] He reasoned that the argument erroneously assumed that joint apprenticeship committees have the exclusive right to train apprentices.

The ALJ rejected appellants' argument that BAS engaged in rule-making when it approved the standards in ABC's apprenticeship program. The ALJ reasoned that in its Manual, BAS stated "the standard which it would require an apprenticeship program to be able to operate within" before BAS would approve such a program. He said that these "well established standards were the 'rules' under which BAS administered its responsibilities and granted approval to apprenticeship programs." BAS's approval of the ABC standards, he said,

> was an interpretation of its "rules" to determine whether the ABC standards were within the scope of the agency's standards. The interpretation of those rules and subsequent application of that interpretation was merely the mechanical operation of the "rules" and not rule making. The agency's "rules" were not changed, modified, or ignored and it was not necessary to do so.

The ALJ did not explain why he used quotation marks when he referred to the standards in the Apprenticeship Manual as "rules." The explanation must be that the Manual has never been adopted in rule-making procedures complying with ch. 227, Stats. For example, administrative rules must be published in the Wisconsin Administrative Code. Section 227.21(1), Stats. The Manual is not published in the Code.

The ALJ denied appellants' request to invalidate BAS's approval of the ABC program. DILHR adopted

---

[8] It is undisputed that over one hundred joint apprenticeship committees exist in Wisconsin.

the decision of the ALJ as DILHR's final decision. Appellants sought ch. 227, Stats., review in the circuit court.[9] That court affirmed DILHR's decision, and this appeal followed.

### 3. Scope of Appellate Review

The scope of our review is identical to that of the circuit court. *Boynton Cab Co. v. DILHR*, 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). We therefore review DILHR's decision, not the circuit court's decision. We will uphold DILHR's factual findings if supported by substantial evidence. Section 227.57(6), Stats. When reviewing questions of law, we are not bound by DILHR's conclusions. *Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991). Because, however, DILHR is charged with the duty of regulating apprenticeships and apprenticeship indentures, sec. 106.01(9), Stats., its interpretation of ch. 106, Stats., is entitled to a degree of judicial deference. *Lisney v. LIRC*, 165 Wis. 2d 628, 633-34 n.4, 478 N.W.2d 55, 56-57 n.4 (Ct. App. 1991).

We accord great weight to DILHR's interpretation of its own rules, unless the interpretation is plainly erroneous or inconsistent with DILHR's rules. *Pfeiffer v. Board of Regents*, 110 Wis. 2d 146, 154-55, 328 N.W.2d 279, 283 (1983). Whether DILHR can approve the ABC program without following rule-making procedure is a question of law which we decide without deference to DILHR's view.

---

[9] DILHR's order is reviewable under ch. 227, Stats., by virtue of secs. 106.01(9) and 101.02(10), Stats.

### 4. Additional Rule-Making Unnecessary for Approval of Apprenticeship Programs Generally

Section 106.01(5i)(a), Stats., plainly provides that an individual may enter an apprenticeship indenture with any organization of employees or association of employers, subject to DILHR's approval. It does not expressly authorize DILHR to grant or withhold approval of an apprenticeship "program" prepared by an association of employers or an organization of employees. Chapter 106, Stats., does not contain the word "program."

As the ALJ found, however, DILHR has approved many apprenticeship programs under its authority in sec. 106.01(5i)(a), Stats. DILHR's implied power, by virtue of sec. 106.01(5i)(a) to approve "programs," if it has a rule in place, is undisputed. We infer from the ALJ's decision (which DILHR adopted) that DILHR interprets Wis. Adm. Code sec. Ind. 95.01(1) to be such a rule. Section Ind. 95.01(1) provides:

> [DILHR] may adopt state-wide or area apprenticeship standards covering minimum training requirements, procedure in processing indentures, qualification of applicant employers and apprentices, functions of joint apprenticeship committees, *and such other matters as constitute an apprenticeship program in a particular trade.* (Emphasis added.)

DILHR knows the specific purpose of its own rule. *See Pfeiffer*, 110 Wis. 2d at 155, 328 N.W.2d at 283 ("An administrative agency knows the specific purposes of the regulations it has promulgated."). DILHR's interpretation of Wis. Adm. Code sec. Ind. 95.01(1) as covering approval of apprenticeship programs proposed by employer associations, including those in the construc-

tion industry, is not plainly erroneous or inconsistent with DILHR's other rules. Not only is it entitled to great weight, *Pfeiffer*, 110 Wis. 2d at 154-55, 328 N.W.2d at 283, but it is correct. We approve it.

Wisconsin Adm. Code sec. Ind. 95.01(1) does not distinguish between programs proposed by an organization of employees and programs proposed by an association of employers. Nor does it distinguish between apprenticeship programs for various industries. Specifically, it does not distinguish construction apprenticeship programs from other apprenticeship programs. It would be pointless for sec. Ind. 95.01(1) to authorize DILHR to adopt statewide apprenticeship standards covering matters constituting an apprenticeship program proposed by an employer association unless DILHR would entertain proposals for such programs.

We conclude that rule-making was unnecessary for DILHR to approve apprenticeship programs generally, and employer association programs in particular, before the ABC program could be approved.

5. BAS Approval of Program Not Itself a Rule

Section 227.01(13), Stats., defines a rule as

[A] regulation, standard, statement of policy or general order of general application which has the effect of law and which is issued by an agency to implement, interpret or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency. "Rule" does not include . . . action or inaction of an agency, whether it would otherwise meet the definition under this subsection, which:

(c) Is an order directed to a specifically named person or to a group of specifically named persons that does not constitute a general class. . ..

316

The ALJ (and therefore DILHR) found in substance that in 1987 ABC submitted apprenticeship standards to BAS for approval and on August 3, 1987, BAS approved the program. Whether that approval is a rule within the meaning of sec. 227.01(13), Stats., is a pure question of law for us to decide with no deference to DILHR's view.

BAS's approval is not a rule, as defined in sec. 227.01(13), Stats. It is at most an order directed to a specifically named person,[10] ABC, for a group of unnamed persons, its members. It is not a general order of general application. It is not issued to implement, interpret or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency.

Consequently, approval of the ABC program, without more, was not a rule-making procedure such that DILHR was required to follow the administrative rule-making procedures in ch. 227, Stats.

### 6. Apprenticeship Manual

Because the ALJ (and therefore DILHR) reasoned that the Manual contains rules or standards which BAS applied to determine the approvability of the ABC program, we next examine that document.

The Manual is a twenty-six page booklet or pamphlet containing four chapters. It was last revised on March 1, 1987. DILHR's published rules recognize the Manual. Wisconsin Adm. Code sec. Ind. 95.08 provides, "The division of apprenticeship and training shall keep

---

[10] When the statutes use the word "person," it includes associations and bodies corporate, unless (as is not true here) such a construction would produce a result inconsistent with the manifest intent of the legislature. Section 990.01(26), Stats.

on record and make available to all interested persons the apprenticeship manual as approved by [DILHR] on July 17, 1956, or as thereafter amended."

### a. DILHR Based Its Approval on Its Rules in the Manual

DILHR contends that it would have abused its discretion had it based its decision on the Manual, because the Manual, never having been published in the Code, is not a rule promulgated under sec. 227.10(1), Stats. Section 227.10(1) provides in part, "Each agency shall promulgate as a rule each statement of general policy. . .." A rule is promulgated by adopting, filing and publishing as provided in secs. 227.116 through 227.21, Stats. Publication must be in the Code. Section 227.21. Since that procedure was not followed, DILHR contends that the Manual is not a rule.

DILHR's contention is extraordinary. It contradicts the history of this case. It ignores its own decision. We reject it. The fact is that DILHR based its decision on the Manual.

In its post-hearing brief to the ALJ, counsel for BAS never raised the point regarding failure of the Manual to comply with rule-making procedures. After that brief was filed, the ALJ found that BAS stated in its Manual the standards which it would require of an apprenticeship program, and those "well established" standards were the "rules" under which BAS approved programs including the ABC program. The ALJ found that BAS interpreted and applied those very "rules" when it approved the ABC program.

Then, in accordance with sec. 227.46(2) and (4), Stats., DILHR gave all parties the opportunity to comment or object to the ALJ's proposed decision. Far from disputing the ALJ's reasoning, counsel for BAS urged

that DILHR adopt the proposed decision as its final decision.[11] On August 9, 1989, DILHR issued its final decision that the "proposed decision of the administrative law judge is adopted as [DILHR's] final decision in this matter."

Thus, DILHR approved the ABC program on the basis of the "rules" contained in the Manual, notwithstanding their lack of promulgation under sec. 227.10(1), Stats.

Whether DILHR abused its discretion when approving the ABC program by basing its decision on the Manual is not an issue in this appeal. Appellants make no such claim. Nor is the validity of any provision in the Manual at issue. Appellants have not attacked the validity of the Manual or of any provision in it, perhaps for the reason that to do so might jeopardize past actions by joint apprenticeship committees. Indeed, the appellants vigorously assert that the Manual is a rule and that DILHR violated it.

b. Manual Contains Rules

We conclude that the Manual contains rules for DILHR's use when evaluating the ABC program, and DILHR could approve the ABC program on the basis of those rules.

Whether all or parts of the Manual are rules requires the application of the statutory definitions of a "rule," sec. 227.01(13), Stats., to the provisions in the Manual. The application of a statute to the undisputed facts is a question of law which we decide independently of DILHR's decision or contentions on appeal. *Kania v.*

---

[11] ABC objected on a point no longer at issue. Appellants filed objections, none of which were directed to the ALJ's conclusion that the Manual is a "rule."

*Airborne Freight Corp.*, 99 Wis. 2d 746, 758, 300 N.W.2d 63, 68 (1981). Given the contradictory positions of DILHR—relying on the <u>Manual</u> as a "rule" to approve the ABC program and disavowing the <u>Manual</u> as a rule on appeal—we decide the issue anew and without deference to DILHR's views.

It is immaterial that the <u>Manual</u> does not describe itself as a rule and that DILHR's published rules do not describe the <u>Manual</u> as a rule. An agency directive meeting the statutory definition of an administrative rule may appear in various forms. The agency need not refer to the directive as a rule. *See Wisconsin Elec. Power Co. v. DNR*, 93 Wis. 2d 222, 240, 287 N.W.2d 113, 123 (1980) (limitation in permit a rule); *County of Dane v. DHSS*, 79 Wis. 2d 323, 329, 255 N.W.2d 539, 543 (1977) ("manual" provision a rule); *Wisconsin Tel. Co. v. DILHR*, 68 Wis. 2d 345, 364-66, 228 N.W.2d 649, 659-60 (1975) ("guideline" a rule); *Frankenthal v. Wisconsin Real Estate Brokers' Bd.*, 3 Wis. 2d 249, 257b, 88 N.W.2d 352, 89 N.W.2d 825, 826 (1958) ("instructions" regarding renewal of licenses a rule); *Josam Mfg. Co. v. State Bd. of Health*, 26 Wis. 2d 587, 595, 133 N.W.2d 301, 306 (1965) (letter retracting permission to use a particular fitting a rule). An agency's directive may contain both rules and non-rules. *Frankenthal*, 3 Wis. 2d at 257a-257b, 89 N.W.2d at 826.

The subtitle of the <u>Manual</u>, "A Compilation of the Policies and Procedures under which the Wisconsin Apprenticeship Program Functions," shows that it is likely to contain statements of policies constituting rules. Those of its provisions which contain mandatory language show DILHR's intent that they have the effect

of law.[12] DILHR is responsible under sec. 106.01(9), Stats., for administration of the apprenticeship law, and the Manual was issued in connection with that obligation. To the extent that a provision in the Manual satisfies the elements of a "rule" as defined in sec. 227.01(13), Stats., the provision is a rule.

The elements of a rule are (1) a regulation, standard, statement of policy or general order, (2) of general application, (3) having the effect of law, (4) issued by an agency, (5) to implement, interpret or make specific legislation enforced or administered by the agency. Section 227.01(13), Stats.; *Wisconsin Elec. Power Co.*, 93 Wis. 2d at 232, 287 N.W.2d at 118-19.

Chapter I of the Manual is entitled "General Information on Wisconsin's Apprenticeship Program," but it contains a host of mandatory requirements for apprenticeship programs generally.[13] The provisions setting

---

[12] A past director of BAS testified that in his view the Manual is a compilation of practices and customs regarding apprenticeships and is more akin to an informational pamphlet than to a rule. Section 227.01(13)(r), Stats., excludes from the definition of an administrative rule "a pamphlet or other explanatory material that is not intended or designed as interpretation of legislation enforced or administered by an agency, but which is merely informational in nature." However, the Manual's provisions using express mandatory language are more than informational. In those provisions the agency speaks with an official voice intended to have the effect of law. The mandatory provisions are rules.

[13] Chapter I establishes the "basic requirements" for an apprenticeship, provides that "[n]o indenture can be approved for apprenticeship unless the occupation involved has been approved by [BAS] as an apprenticeable occupation," and establishes requirements for BAS approval of new occupations as apprenticeable. It contains mandatory criteria for approval of apprenticeship programs for high school students. It requires that every

forth those requirements satisfy the elements of and are rules.

Chapter II is entitled "Policies and Procedures for State and Area Joint Apprenticeship Committee Programs." It describes how joint committees are established and their functions, their advisory nature and their power to develop apprenticeship standards, subject to adoption by BAS, and how the committees draw standards for a statewide apprenticeship program. Those provisions are informational and descriptive, and therefore are not rules. Section 227.01(13)(r), Stats. Chapter II also provides that when BAS adopts state standards recommended by a committee, all indentures "will have to meet the minimums of those standards." The latter provision meets the elements of and is a rule.

Chapter III, covering policies and procedures for individually sponsored apprenticeship programs, contains mandatory provisions regarding equal employment opportunity, selection, indenture processing, recordkeeping, indenture cancellation and apprentice layoffs, supervision, school attendance and progress. All of those provisions are rules. Chapter IV contains mandatory provisions regarding instruction, methods of providing paid related instruction, industry's obligation to see that related instruction is correct, and recordkeeping. Those provisions are also rules.

No showing has been made that the ABC program could not be approved on the basis of those provisions in the Manual, particularly Chapter I, which are rules or, in

apprentice indenture cover the period of the apprenticeship, the probationary period, school attendance, a schedule of processes to be worked, minimum wages, and credit for previous indentured time and work experience. It requires every indenture to meet the approved state standards for the trade.

DILHR's terminology, "standards." On the contrary, the ALJ found as a fact that BAS's approval of the ABC program was an interpretation of its "rules" to determine whether the program met its standards. That interpretation by BAS of its own rules is entitled to deference, since it has not been shown to be plainly erroneous or inconsistent with its rules. *Pfeiffer*, 110 Wis. 2d at 154-55, 328 N.W.2d at 283.

### 7. Long-standing DILHR Interpretation

Appellants argue, however, that by approving ABC's program, DILHR has reversed a long-standing interpretation of its rules and its Manual. DILHR's past interpretation, according to appellants, is that joint committees are required in the construction trade. We reject the argument.[14]

Appellants' argument is an assertion of fact. We look to the record to test it. The record fails to show that the claimed fact exists. There is no evidence that DILHR has ever denied approval of a program merely because the program did not involve a joint committee. Appellants claim that DILHR "had consistently rejected similar [programs] by the ABC," but the ALJ found that DILHR only once rejected an ABC program, and it did

---

[14] Because we reject appellants' assertion that DILHR had the claimed long-standing interpretation of its rules, we need not address the argument that DILHR had to undertake rule-making procedures to change the interpretation. Appellants' argument relies on case law construing what is now sec. 227.10(1), Stats., to require rule-making when an agency revises its interpretation of a statute, not its own rules. *Schoolway Transp. Co. v. Division of Motor Vehicles*, 72 Wis. 2d 223, 237, 240 N.W.2d 403, 410 (1976). We note in passing that what is now sec. 227.10(1) differs from its predecessor the *Schoolway* court applied.

so because the program's standards did not meet state standards.[15]

The ALJ had no reason to reach the likely cause of the lack of evidence for the "long-standing interpretation" claimed by appellants. The only reasonable inference is that an attorney general opinion is the likely cause. In 1945, DILHR's predecessor, the Industrial Commission, asked the attorney general whether the commission could require "that all apprentices in a given trade be indentured exclusively to a joint committee organized in that trade and . . . deny to an individual employer the right to enter into an apprenticeship indenture." 34 Op. Atty. Gen. 257, 258-59 (1945). The attorney general responded that sec. 106.01, Stats. (1945), recognizes that an apprentice may be indentured to an individual employer and that the commission could not require that all apprentices be indentured exclusively to a joint committee and deny an individual employer the right to enter an apprenticeship indenture. Op. Atty. Gen. at 259. The attorney general stated that such a requirement would be contrary to the intent, purposes and plain provisions of the statute. *Id.*[16]

8. Wisconsin Administrative Code Ch. Ind. 95

We turn to appellants' claim that Wis. Adm. Code ch. Ind. 95 generally and its specific rules constitute an interpretation by DILHR that joint committees control

---

[15] The ALJ's finding refers to ABC's proposed 1973 program which we earlier described.

[16] The commission's 1945 question and the attorney general's response did not directly involve apprenticeship *programs* sponsored by employer associations. The ALJ's analysis did not require reliance on the attorney general's opinion. The ALJ did not cite it.

apprenticeship programs. Whether ch. Ind. 95 and its specific rules constitute such an interpretation is a question of law, since the specific rules should themselves disclose or imply such an interpretation, if it exists.

As we have said, an interpretation by DILHR of its own rules is entitled to great weight unless it is plainly erroneous or inconsistent with its rules. *Pfeiffer*, 110 Wis. 2d at 154-55, 328 N.W.2d at 283. However, nothing in the ALJ's opinion suggests that when BAS approved the ABC program it directly interpreted any part of Wis. Adm. Code ch. Ind. 95, in addition to its Manual. For that reason, we do not employ that scope of review when examining ch. Ind. 95.

Appellants assert that ch. Ind. 95 requires that joint committees control construction apprenticeships. But Wis. Adm. Code ch. Ind. 95 makes no express reference to the construction trades, except in Wis. Adm. Code sec. Ind. 95.10 regarding family-owned construction businesses. That provision hardly supports appellants' position.

Appellants assert that Wis. Adm. Code sec. Ind. 95.02 shows that joint committees control all apprenticeship programs in the construction industry. We disagree. Section Ind. 95.02(1) describes the function of joint committees as acting "in an advisory capacity to [DILHR] and to be parties to indentures as provided in s. 106.01(5i)(a), Stats." It does not provide that only joint committees may be parties to indentures. Indeed, such a provision or interpretation would contradict sec. 106.01(5i)(a) which expressly authorizes apprentices to enter an indenture with any "association of employers."

Wisconsin Adm. Code sec. Ind. 95.02(2) provides that sec. Ind. 95.02 "does not apply to shop or plant sponsored apprenticeship programs . . .." Appellants

assert that sub. (2) means that, except for shop- or plant-sponsored programs, the joint committee system must be used. Subsection (2) says no such thing. Exclusivity for the joint committee system cannot be predicated on Wis. Adm. Code sec. Ind. 95.02.

We reject appellants' contention that Wis. Adm. Code sec. Ind. 95.05 confers on joint committees exclusive control of construction apprenticeships. That section provides in relevant part: "In trades and communities having active area joint apprenticeship committees recognized by [DILHR], a copy of the application for approval of indentures will be referred to such committees by [DILHR] for recommendation."[17] We agree with DILHR's interpretation of the quoted excerpt as described by a former director of BAS. He testified that DILHR had interpreted the excerpt as applying only when an aspiring apprentice submitted an application for an indenture directly to DILHR. He could recall that happening only once. In such a case, DILHR must refer

---

[17] The full text of Wis. Adm. Code sec. Ind. 95.05 is as follows:

> In trades and communities having active area joint apprenticeship committees recognized by [DILHR], a copy of the application for approval of indentures will be referred to such committees by [DILHR] for recommendation. [DILHR] will expect applicants to appear personally before committees if and when requested to do so by the committee. If no recommendation is received by [DILHR] from the committee within 40 days after receipt of application by the committee, [DILHR] will act on the application without committee recommendation. This time limit may be extended by [DILHR] on showing of good cause. Joint apprenticeship committee recommendations on individual applications shall be subject to review and revision by [DILHR] in the event applicants are dissatisfied with committee action.

a copy of the indenture application to the joint committee for recommendation.[18]

That procedure does not confer exclusivity on the joint committees. For example, the person who seeks an ABC program apprenticeship applies directly to the ABC committee, not to DILHR. In that case, referral by DILHR to a joint committee would be unnecessary, and Wis. Adm. Code sec. Ind. 95.05 would not apply. The rule directs DILHR, not apprenticeship programs, to refer applications, and the ABC program need not comply with the rule.

Nor may exclusivity for joint committees be based on Wis. Adm. Code sec. Ind. 95.08, which recognizes the Manual. Chapter II of the Manual pertains to state and area joint apprenticeship committees in the construction industry. However, the Manual does not subject all construction apprenticeship programs to the joint committee system. As we have said, no showing has been made that the ABC program could not be approved on the basis of the Manual, particularly Chapter I.

We conclude that Wis. Adm. Code ch. Ind. 95 does not constitute an interpretation by DILHR that construction apprenticeships are controlled by the joint committee system in the construction industry.

9. Wisconsin Administrative Code Sec. ILHR 81.02

Appellants assert that Wis. Adm. Code sec. ILHR 81.02 is evidence that the joint committees control apprenticeships in the construction industry. Section ILHR 81.02 pertains only to plumbing apprentice-

---

[18] Although DILHR must refer applications it receives to the joint committee for recommendation, that recommendation is only advisory. Wisconsin Adm. Code sec. Ind. 95.02(1).

ships.[19] It provides that a plumbing apprentice's education must include day and night school education with courses approved by DILHR and the state plumbing joint committee; that competency examinations must be approved by DILHR and that committee; and that night school instruction must include subjects whose courses have been requested by the local joint apprenticeship committee and approved by DILHR and the state committee.

Wisconsin Adm. Code sec. ILHR 81.02 is a far cry from conferring exclusive control over plumbing apprenticeships to the joint committee system. As provided in Chapter I of the Manual, for example, every apprenticeship indenture must cover the extent of the period of apprenticeship, probation, processes to be worked, minimum wages, and, of course, school attendance. Wisconsin Adm. Code sec. ILHR 81.02 touches only education. We have already decided that an employer apprenticeship program in the construction trade may fit within Chapter I of the Manual.

Moreover, we see no reason why an employer-sponsored apprenticeship program cannot accommodate Wis. Adm. Code sec. ILHR 81.02. If an employer-sponsored program must comply with Wis. Adm. sec. ILHR 81.02 (a point we need not decide) that would not confer exclusivity on the joint apprenticeship system, even with respect to plumbing apprenticeships.[20]

10. Policy Statement

---

[19] ABC's program contains standards relating to plumbing and six other trades as well.

[20] Footnote 14 applies to parts 8 and 9 of this opinion as well as to part 7.

We next examine the 1973 "policy statement" on which appellants rely to support their view that DILHR has recognized the exclusivity of the joint committee apprenticeship system in the construction industry. A DILHR monthly statistical report released in March 1973 contained the statement and the explanation for it. The report contained the following:

## POLICY STATEMENT

"The [Industrial] Commission reaffirms that the apprenticeship regulations in Wisconsin require that any construction trades employer wishing to employ an apprentice in an occupation that falls within the trade jurisdiction of a joint apprenticeship committee designated by the Department of Industry, Labor and Human Relations must have that program processed by that joint apprenticeship committee and must be operated in accordance with the apprenticeship standards developed by that committee and approved by the Department."

This statement was issued on March 5, 1973 as a result of misconceptions stemming from Open Shop Standards in operation on the East Coast which are following the Open Shop movement into the state.

A policy statement may of course be a rule if it has the effect of law and is issued to implement, interpret or make specific legislation administered by the agency. Section 227.01(13), Stats. The ALJ rejected appellants' claim to exclusivity for the joint committees but did not make express findings regarding the 1973 statement.

That rejection by the ALJ is consistent only with an underlying or implicit finding that the 1973 policy statement was not intended to interpret DILHR's rules and

the <u>Manual</u> as conferring exclusivity on the joint apprenticeship committee system. "A finding not explicitly made may be inferred from other properly made findings" made by the agency. *Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 591, 286 N.W.2d 540, 543 (1979). If the record contains evidence supporting that finding, we may infer that the ALJ made it and simply omitted it from his decision. *In re Doersching*, 138 Wis. 2d 312, 323, 405 N.W.2d 781, 786 (Ct. App. 1987).

The record contains that evidence. The past director of BAS testified that DILHR released the 1973 statement after the United States Department of Labor approved ABC's national apprenticeship standards. ABC had publicized that approval and its own national standards, and DILHR feared Wisconsin contractors would believe they could employ apprentices under the national standards. DILHR believed that employment of apprentices under those standards would violate Wisconsin's apprenticeship law. The purpose of the policy statement was to ensure that only state-approved programs would operate in Wisconsin.

In light of that testimony, the policy statement did not mean that even in 1973 the joint apprenticeship committees had exclusive power over the selection, education and training of construction apprentices in Wisconsin. It meant that a Wisconsin employer must employ an apprentice under Wisconsin law. At that time a construction apprenticeship program was processed through a joint apprenticeship committee. The 1973 policy statement no more suggested exclusivity than would telling a person looking for a restaurant that there is only one in town.

The ALJ recognized that this is true. He observed that

> the mere fact that the agency has not been presented with employer association sponsored programs for the construction industry does not mean that it engaged in "rule making" or lost the authority to approve such a program. *See, e.g., United States v. Morton Salt Company*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), holding that even though the F.D.C. had not used a particular investigative procedure in a particular situation before, it had the authority to do so, [and] that authority was not lost by the use of a different investigative procedure in the past.

### 11. Evidentiary Rulings

Appellants assert that the ALJ erred because he failed to admit evidence that in actual operation the ABC program is far removed from anything allowed under the statutes, DILHR's published rules or the Manual. The ALJ did not err. Whether the ABC program in actual operation departed from the statutes, DILHR's published rules or the Manual is not an issue. If ABC is violating the terms of the approval or otherwise operating outside the law, that is an enforcement problem. It has no effect on the question before the ALJ and before us an appeal: whether DILHR was required to engage in additional rule-making before it could approve the ABC program.

Appellants assert that the ALJ should have allowed testimony or documentary evidence regarding involvement by the legislature's Joint Committee for Review of Administrative Rules (JCRAR) after DILHR approved the ABC program. JCRAR's purpose is to "promote adequate and proper rules, statements of general policy and

interpretations of statutes by agencies and an understanding upon the part of the public respecting the rules, statements and interpretations." Section 227.26(2)(a), Stats. Under certain circumstances, JCRAR may temporarily suspend a rule. Section 227.26(2)(d), Stats.

We fail to see how any action by the JCRAR bears on the issue in this case: whether DILHR's approval was a rule such that it should have followed rule-making procedure. Any action by the JCRAR was after-the-fact and irrelevant to that issue.[21] The ALJ properly excluded the evidence.

12. Conclusion

Because we conclude that approval of the ABC program was not a procedure such that DILHR was required to follow rule-making procedure, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.

---

[21] Even if the JCRAR, as asserted by appellants, "voted to suspend the approval of the program until such time as a rule was promulgated to establish consistency with" Wis. Adm. Code sec. Ind. 95.02(2), our analysis is unaffected. Whether DILHR's approval was a rule or required rule-making is an issue of law for us to decide.