COUNTY OF DANE, Plaintiff-Respondent,

v.

Larry N. WINSAND, Defendant-Appellant.†

Court of Appeals

*No. 03–2004. Submitted on briefs January 23, 2004.—Decided March 11, 2004.*

2004 WI App 86

(Also reported in 679 N.W.2d 885.)

---

† Petition to review denied 6-8-04.

---

787

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ralph A. Kalal* of *Kalal & Associates*, Monona.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph E. Mimier*, assistant district attorney, Dane County District Attorney's Office, Madison.

Before Deininger, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J.   Larry Winsand appeals a judgment of conviction for operating a motor vehicle while intoxicated (OWI) in violation of an ordinance adopting WIS. STAT. § 346.63(1)(a) (2001–02).[1] He contends the trial court erred in denying his motion to exclude from evidence the results of the Intoximeter EC/IR test of his breath. He asserts the approval of the instrument by the chief of the chemical test section of

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. Although this case was originally a one-judge appeal, we ordered that this case be made a three-judge appeal pursuant to Wis. Stat. Rule 809.41(3).

the Department of Transportation (DOT)[2] involved standards that should have been, but were not, promulgated as an administrative rule under the rulemaking procedures established in WIS. STAT. ch. 227, and therefore the approval was invalid. We conclude that none of the exhibits or testimony establishes that the approval of the instrument by the section chief involved standards that meet the definition of "rule" within the meaning of WIS. STAT. § 227.01(13). We therefore affirm.

## BACKGROUND

¶ 2. Winsand was given a citation for OWI and requested a jury trial. Prior to trial he moved to exclude the results of the breath test administered to him by a law enforcement officer using an Intoximeter EC/IR. He contended that the approval of this instrument by the section chief constituted an invalid administrative rule because it involved standards not promulgated as required by WIS. STAT. ch. 227. In support of his motion, Winsand presented the transcript of the testimony of the section chief in another case, a procedure to which the State agreed.[3]

¶ 3. The section chief testified she was responsible for approving breath test instruments, and she had approved the instrument referred to as the Intoximeter EC/IR. She identified a number of exhibits, which fall into these categories as relevant to this appeal: (1) specifications for bids that resulted in the

---

[2] The chemical test section is within the Wisconsin State Patrol, which is within the Division of Motor Vehicles, which is within DOT.

[3] In a letter to the court, the State also stipulated that Winsand's breath was tested by an Intoximeter EC/IR, and no evidence was taken on that issue.

purchase of the Intoximeter EC/IR; (2) an instrument evaluation protocol used as a guideline to approve the Intoximeter EC/IR; and (3) methodology and results of various tests performed on particular Intoximeter EC/IRs at various times. When asked if the Intoximeter EC/IR met her standards, the chief answered "yes," and when asked to describe those standards, she answered: "We did testing for accuracy and precision and interferents, mouth alcohol and RFI, and it satisfied us on all the performances of those separate items." When later asked if she had submitted "any of these standards or criteria or whatever" to the legislative council or otherwise followed the rulemaking procedures in chapter 227 with respect to them, she answered "no."

¶ 4. The trial court concluded that the section chief had acted within her statutory and regulatory authority in approving the Intoximeter EC/IR and that the rulemaking procedure in WIS. STAT. ch. 227 was not required. Winsand then withdrew his request for a jury trial and the parties stipulated to the evidence for purposes of trial and sentencing. The court found Winsand guilty of OWI.

## DISCUSSION

¶ 5. Winsand contends the trial court's conclusion that the rule-making procedures in WIS. STAT. §§ 227.135–227.26 did not apply was based on an erroneous construction of § 227.01(13). According to Winsand, the section chief used standards in her approval of the Intoximeter EC/IR that come within the definition of "rule" in 227.01(13): a "standard . . . of general application which has the effect of law and which is issued by an agency to implement . . . legislation . . . administered by the agency or to govern the . . . proce-

dure of the agency."[4] Because the standards she used were not promulgated as a rule, he asserts, the court should declare them invalid.[5] The construction of statutes when the relevant facts are not disputed presents

---

[4] WISCONSIN STAT. § 227.01(13) provides:

"Rule" means a regulation, standard, statement of policy or general order of general application which has the effect of law and which is issued by an agency to implement, interpret or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency. "Rule" does not include, and s. 227.10 does not apply to, any action or inaction of an agency, whether it would otherwise meet the definition under this subsection, which [comes within any of the following exceptions].

[5] Winsand apparently relies on WIS. STAT. § 227.40(4)(a), which provides: "In any proceeding pursuant to this section for judicial review of a rule, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was promulgated without compliance with statutory rule-making procedures." Section 227.40(1) provides that "[e]xcept as provided in sub. (2), the exclusive means of judicial review of the validity of a rule shall be an action for declaratory judgment as to the validity of such rule brought in the circuit court for Dane County." Section 227.40(2) then lists certain proceedings in which "[t]he validity of a rule may be determined . . . when material therein." Winsand is apparently of the view that he may challenge the approval of the Intoximeter EC/IR as an invalid rule because this proceeding is a prosecution for violation of a county ordinance. *See* § 227.40(2)(c). The State makes a brief statement suggesting that it is not material to this proceeding whether the procedures and criteria used to approve the Intoximeter EC/IR were promulgated as a rule because Winsand is not asserting they resulted in approval of an inaccurate instrument. We recognize there may be an issue whether the challenge Winsand makes is "material" in this proceeding within the meaning of § 227.40(2). However, because this argument is not more fully developed by the State and because we are satisfied that Winsand has not shown that

a question of law, which we review de novo. *State v. Busch*, 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998).

¶ 6. Before addressing Wis. Stat. § 227.01(13), we set forth the statutory framework relevant to approval of the Intoximeter EC/IR. Upon an arrest for OWI and certain other offenses, a law enforcement officer may request the driver to submit to a test of breath, blood, or urine, following certain procedures. Wis. Stat. § 343.305(1)-(5). Section 343.305(6) establishes the requirements for the tests, with § 343.305(6)(b) providing:

> (b) The department of transportation shall approve techniques or methods of performing chemical analysis of the breath and shall:
>
> 1. Approve training manuals and courses throughout the state for the training of law enforcement officers in the chemical analysis of a person's breath;
>
> 2. Certify the qualifications and competence of individuals to conduct the analysis;
>
> 3. Have trained technicians, approved by the secretary, test and certify the accuracy of the equipment to be used by law enforcement officers for chemical analysis of a person's breath under sub. (3)(a) or (am) before regular use of the equipment and periodically thereafter at intervals of not more than 120 days; and
>
> 4. Issue permits to individuals according to their qualifications.

¶ 7. The results of a test administered in accordance with Wis. Stat. § 343.305 is admissible in an OWI

the section chief used standards in the approval of the Intoximeter EC/IR that are a "rule" within the meaning of § 227.01(13), we do not address this issue.

proceeding on the issue whether the person was under the influence of an intoxicant, and it is given "prima facie effect" without the need for expert testimony in certain circumstances. Sections 343.305(5)(d) and 885.235. The purpose of requiring the evaluation and approval of breath test instruments is to make sure the results have the accuracy that is deserving of the prima facie effect given them without an expert testifying on the accuracy.[6] *State v. Baldwin*, 212 Wis. 2d 245, 259–60, 569 N.W.2d 37 (Ct. App. 1997), *rev'd sub nom. on other grounds, State v. Busch*, 217 Wis. 2d 429, 576 N.W.2d 904 (1998).

¶ 8. To implement Wis. Stat. § 343.305(6)(b), DOT has adopted Wis. Admin. Code § Trans 311. Section Trans 311.04 provides:[7]

[6] Winsand apparently overlooks the fact that, even if he were successful in establishing that the requirements of Wis. Stat. § 343.305(6)(b) were not met with respect to the instrument that tested his breath, he would not be entitled to exclusion of the results; rather, that evidence would simply lose the benefit of §§ 343.305(5)(d) and 885.235.

[7] Winsand asserts in his reply brief that he is concerned with the section chief's approval of the type of instrument under Wis. Admin. Code § Trans 311.04, not the testing and certification of all instruments approved for use, which are addressed in § Trans 311.10. Section Trans 311.10 provides:

**Procedure for testing and certifying the accuracy of breath alcohol test instruments.** (1) All quantitative breath alcohol test instruments approved for use in this state shall be tested and certified for accuracy in accordance with the following standards:

(a) Each instrument shall be tested and certified for accuracy before regular use and periodically thereafter pursuant to s. 343.305(10)(b)3., Stats.

(b) Each test for accuracy shall include, but not be limited to, an instrument blank analysis and an analysis utilizing a calibrat-

**Approval of breath alcohol test instruments.**
**(1)** Only instruments and ancillary equipment approved by the chief of the chemical test section may be used for the qualitative or quantitative analysis of alcohol in the breath.

**(2)** (a) All models of breath testing instruments and ancillary equipment used shall be evaluated by the chief of the chemical test section.

ing unit. The result of the calibrating unit analysis shall fall within 0.01 grams of alcohol per 210 liters of the established reference value.

(c) The original reports of instrument maintenance and certifications shall be forwarded to and retained by the department.

**(2)** Each qualitative breath alcohol test instrument approved for use in this state shall be checked for accuracy as follows:

(a) The instrument shall be checked by an individual holding a valid permit for the operation thereof.

(b) The checks shall be conducted at intervals established by the department.

(c) Each check shall consist of an analysis utilizing a calibrating unit, the results of which shall fall within tolerances established by the department.

**(3)** Reference solutions for use in calibrating units shall have the approval of the chief of the chemical test section.

(a) Each reference solution shall be identified with a lot number.

(b) An assay report for each lot of reference solution shall be retained by the department specifying the amount of alcohol per milliliter of solution and the predicted result when used in a calibrating unit with a breath alcohol test instrument.

We are uncertain why Winsand considers this distinction significant, but, in any event, it does not affect our analysis.

(b) The procedure for evaluation shall be determined by the chief of the chemical test section.

(3) Each type or category of instrument shall be approved by the chief of the chemical test section prior to use in this state.

■■■

¶ 9. Turning now to the definition of "rule" in WIS. STAT. § 227.01(13), we observe that Winsand does not explain precisely what should have been promulgated as a rule. He does refer to the "approval" of the instrument, but approval of a particular item or program is not in itself a rule because it is not a general order of general application. *See Milwaukee Area Joint Plumbing Apprenticeship Comm. v. DILHR*, 172 Wis. 2d 299, 316–17, 493 N.W.2d 744 (Ct. App. 1992). Winsand also refers to the section chief's testimony in response to questioning that the Intoximeter EC/IR met her "standards." However, her testimony does not describe any specific standards but, rather, describes the qualities the instrument was tested for. Therefore, if there are any standards used in the approval process that meet the definition of "rule," they must be contained in the exhibits she identified. We examine each of the three categories of exhibits in turn.

¶ 10. The first category is the specifications for bidders. This exhibit is entitled "Evidential Breath Alcohol Testing Instruments—Specifications for Bidders." The introduction explains that DOT is "planning to purchase 325 evidential breath alcohol testing instruments and 275 breath alcohol simulators. Only those instruments which meet the specifications listed in this document will be considered for purchase . . . ." We conclude this exhibit comes within the exception in WIS. STAT. § 227.01(13)(k) for action or inaction of an agency that "[r]elates to . . . the purchase of . . . equip-

ment . . . by . . . a state agency." The specifications for bidders without question relate to the purchase of equipment by a state agency.

¶ 11.  The second category is an exhibit entitled "Breath Alcohol Analyzer Intrument [sic] Evaluation Protocol, March 1994." This contains procedures for testing the instruments and consists largely of questions to be asked in evaluating the instruments. The section chief explained in her testimony that "[w]e left the guidelines broad in the protocol so that we could discuss them amongst the team. It was a different team that put them together . . . for the testing." Materials developed by an agency as a reference aid for its staff that are "couched . . . in terms of advice and guidelines rather than setting forth law-like pronouncements" are not a "rule" within the meaning of WIS. STAT. § 227.01(13) because they are not intended to have the effect of law. *Schoff v. Employee Trust Funds Bd.*, 230 Wis. 2d 677, 691 n.5, 602 N.W.2d 543 (Ct. App. 1999) (citation omitted). Thus, we distinguish between mandatory language in which the agency "speaks with an official voice intended to have the effect of law," *Plumbing Apprenticeship Comm.*, 172 Wis. 2d at 320, 321 n.12, and informational and descriptive materials prepared by an agency. *Id.* at 322. We are satisfied that the evaluation protocol is intended as guidelines for the staff in testing the instruments and does not establish any standards of general application having the effect of law.

¶ 12.  The third category of document is comprised of tests of various kinds that were conducted on particular Intoximeter EC/IR instruments, apparently not all the same instruments, on various dates. The documents relate the methodology used and the results

of the tests. Winsand does not explain what in these exhibits meets the definition of a rule. We can discern nothing that does. The record of a test conducted on a particular instrument is not a standard of "general application." *See Id.* at 316–17.

¶ 13. In summary, Winsand has not established that, in approving either the specific instrument that tested his breath or that category of instruments, the section chief used standards that meet the definition of WIS. STAT. § 227.01(13) but were not promulgated as a rule. In addition, he does not argue that the section chief did not comply with § 343.305(6)(b) or with the regulations in WIS. ADMIN. CODE § TRANS 311. Accordingly, the test results are admissible under § 343.305(5)(d) with the benefits of WIS. STAT. § 885.235. The trial court therefore correctly denied Winsand's motion to exclude the test results.

*By the Court.*—Judgment affirmed.